**KIMBLE, NELSON, AUDILETT & KASTNER, P.C.**
335 NORTH WILMOT, SUITE 500
TUCSON, ARIZONA 85711-2636
(520) 748-2440/FAX (520) 748-2469

Daryl A. Audilett, Esq.
State Bar No. 009007; PCC No. 2036
Email: daa@audilettlaw.com
Rebecca Parker-Perry, Esq.
State Bar No. 010692
Attorneys for Defendants Stover, City of Tucson,
Tucson Police Department and Miranda

# IN THE UNITED STATES DISTRICT COURT

# IN AND FOR THE STATE OF ARIZONA

| | |
|---|---|
| MARIA MARGARITA RIVERA and ROBERT C. RIVERA, wife and husband,<br><br>Plaintiffs,<br><br>v.<br><br>JEFF STOVER and CAROLINE STOVER, husband and wife, CITY OF TUCSON, a body politic, CITY OF TUCSON POLICE DEPT. POLICE CHIEF RICHARD MIRANDA, JOHN AND JANE DOES 1-5, FICTITIOUS DEFENDANTS,<br><br>Defendants. | **NO. CV-07-109-TUC RCC**<br><br>**DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>**(ORAL ARGUMENT REQUESTED)** |

Defendants Tucson Police Department, Chief Richard Miranda, Officer Jeffrey Stover, Caroline Stover and the City of Tucson move for partial summary judgment on the following issues pursuant to Rule 56, Ariz. R. Civ. P. Tucson Police Department is not a jural entity - it cannot be sued. There is no allegation that Chief Miranda was present at, directed, or cooperated in any of the causes of action relied on for liability. The City cannot be held liable under 42 U.S.C. §1983 because there is no allegation or evidence that it was an execution of its policy or custom that inflicted the alleged injury to Plaintiffs. Plaintiffs' Notice of Claim is deficient, thus the state law claims are barred.

Rivera v. City of Tucson
District Court Case No. CV 07-109 TUC RCC

This motion is supported by the attached Memorandum of Points and Authorities and the Separate Statement of Facts:

### Memorandum of Points and Authorities

<u>Complaint Allegations:</u>

*Count One: Negligence.* Plaintiff alleges all of the Defendants violated the duty to exercise reasonable care in their investigation of and attempted apprehension of Deangelo Rivera, in protecting and keeping Plaintiffs from harm during the investigation and apprehension of Deangelo Rivera, and in exercising reasonable care in the training and supervision of Officer Stover.

*Count Two: Intentional Infliction of Emotional Distress.* This count is pled against all Defendants. Defendant Stover allegedly negligently, recklessly, or intentionally killed Deangelo Rivera, intentionally causing Plaintiffs emotional distress or recklessly disregarding the near certainty that such distress would result.

*Count Three: 42 U.S.C. § 1983.* This count is pled against all Defendants. Defendants allegedly violated the Fourth Amendment by "injuring, harming, and discriminating against Plaintiffs for their acts and wrongfully killing Deangelo Rivera."

Plaintiffs' Complaint, paragraph 8, states that Richard Miranda is the Chief of Police for the Tucson Police Department and the Tucson Police Department is subject to the various claims made by Plaintiffs.

**Facts**:

On the night of February 15, 2006, the Tucson Police Department received a 911 call reporting a possible domestic violence at an apartment. (SOF 1).  The dispatcher conveyed the information to the responding officers that the subject, Deangelo Rivera, had been violent in the past. (SOF 2).

Rivera v. City of Tucson
District Court Case No. CV 07-109 TUC RCC

Tucson Police Officer Jeff Stover was dispatched to the apartment complex. (SOF 3). When he arrived in the parking lot, he was met by the lessee of the apartment, Tanya Severson. (SOF 4). She showed him the car owned by her friend Serena Hernandez. Officer Stover saw bullet holes in Serena's car windshield. (SOF 5). Fearing for the immediate safety of Serena, Officer Stover went to the apartment and entered, having been given permission to do so by Tanya Severson. (SOF 6). Both Serena and Deangelo Rivera were present in the apartment. Mr. Rivera had blood on his nose. Officer Stover asked Mr. Rivera if he was all right, and if he had any guns on him, and Mr. Rivera did not respond . (SOF 7). Officer Stover asked Mr. Rivera to pull his shirt up so he could see his waistband, but Mr. Rivera refused, cursed at Officer Stover, and took up a bladed or fighting stance, and moved toward Officer Stover. (SOF 8). As Mr. Rivera walked closer to Officer Stover, Stover told him to stay back. As Mr. Rivera continued to come closer to Officer Stover, Stover saw Rivera tense up and start to raise his hands. (*Id.*) Stover landed a palm heel strike to the right side of Mr. Rivera's head, which knocked Rivera back away from Stover. Stover called for backup to come Code 3, lights and siren. (*Id.*). Rivera started to walk back toward Stover, and Stover told him to stay back, but Rivera continued toward Stover and started to raise his hands up. Stover struck Rivera a second time. (*Id.*). Rivera started to walk backwards into the bedroom. In order not to lose contact, Stover grabbed Rivera's shirt; the shirt ripped and Rivera tried to pull out of the shirt. Both of Rivera's hands went to his left hip, but Stover could not see what Rivera was grabbing for. (SOF 9).

In an attempt to subdue Rivera, Officer Stover landed a kick to the inside of Rivera's right thigh. Rivera bent over, and Stover pushed him back against the wall. Rivera's shirt fell open, and Stover then saw a handgun in Rivera's waistband, at his left hip. Stover said, Don't move, twice. (SOF10). Officer Stover ordered Rivera to not move,

3

but Rivera pulled the gun from his waistband and started to swing it around toward the officer. (SOF 11).   Fearing imminent bodily harm to himself and to Serena Hernandez, who was still in the apartment and close to the altercation despite Stover pushing her back several times and telling her to leave, Stover shot Mr. Rivera.  (SOF 12).

***The Tucson Police Department is a non-jural entity and thus not a proper defendant.***

Nothing empowers the Tucson Police Department to sue or to be sued.  Agencies that may sue and be sued are known as jural entities.  Non-jural entities are not subject to suit.  *See Grande v. Casson*, 50 Ariz. 397, 72 P.2d 676 (1937) (Action arising under State Highway Code had to be brought against the State itself, not against the highway commission, since the commission had no right to sue or be sued.); *Kimball v. Shofstall*, 17 Ariz. App. 11, 13, 494 P.2d 1357, 1359 (1972) (Neither the constitution nor the applicable statutes provide that the State Board of Education, a constitutional creation, is "an autonomous body with the right to sue and to be sued."); *Yamamoto v. Santa Cruz County Bd. of Supervisors*, 124 Ariz. 538, 539, 606 P.2d 28, 29 (App. 1979) (An action cannot be brought against a state agency that lacks the authority to sue or be sued in its own name.).  The Tucson Police Department does not have the authority to sue or be sued.  It  should be dismissed as a defendant.

***Chief Richard Miranda is not personally liable for the acts of members of the police force.***

The chief of a municipal police department may have the duty of selecting the members of the force, "but he is not responsible for their acts unless he has directed such acts to be done or has personally co-operated, for each policeman is, like himself, a public servant." *Russell v. Glascow*, 63 Ariz. 310, 315, 162 P.2d 129 (1945); *County of Placer v. Aetna Casualty & Surety Co.*, 50 Cal. 2d 182, 323 P.2d 753 (1958)(same); *Jordan v. Kelly*, 223 F. Supp. 731, 737 (W.D. Mo. 1963)(same). There is no evidence

Rivera v. City of Tucson
District Court Case No. CV 07-109 TUC RCC

Chief Miranda "directed" to be done any of the acts alleged by Plaintiffs or that he "personally cooperated" in those alleged acts. He should be dismissed from this lawsuit.

### *Plaintiffs cannot show a causal connection between Chief Miranda's action or inaction and the alleged constitutional harm.*

Plaintiffs' allegations against Chief Miranda are wholly conclusory, not based on facts. Such allegations are to be rejected as insufficient to support a claim under section 1983. *Jones v. Community Redev. Agency*, 733 F.2d 646, 649 (9th Cir. 1984). The plaintiff must allege with at least some degree of particularity overt acts by defendants which support the plaintiff's claim. *Id.* Plaintiffs have not alleged, nor can they show, facts sufficient to withstand summary judgment.

A supervisor is liable for constitutional violations of his subordinates only if the supervisor participated in or directed the violations, or knew of the violations and with deliberate indifference failed to act to prevent them. *Wilson v. Seiter*, 501 U.S. 294, 303 (1991). *See also Ybarra v. Reno Thunderbird Mobile Home Village*, 723 F.2d 675, 680 (9th Cir. 1984) (supervisor not liable under §1983 for constitutional deprivations by subordinates, absent participation, direction, or failure to train.) An official who has failed to prevent a constitutional violation by inadequately training, supervising or investigating his subordinates may be liable under § 1983 if the plaintiff shows 1) the supervisor possessed the requisite culpable state of mind (deliberate indifference), and 2) a causal connection between the supervisor's action or inaction and the alleged constitutional harm. *Redman v. County of San Diego*, 942 F.2d 1435, 1446-1447 (9th Cir. 1991). A supervisor is "liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 45 (9th Cir. 1989). A supervisor may also be held liable if the supervisor acts with "reckless or callous indifference to the rights of others." *Menotti v. City of Seattle*, 409 F.3d 1113, 1149 (9th Cir. 2005).

5

Rivera v. City of Tucson
District Court Case No. CV 07-109 TUC RCC

***A municipality may not be held liable for the unconstitutional acts of its employees unless those acts either implemented or executed a policy statement, ordinance, regulation, or decision that was officially adopted, or follow a well-settled custom.***

The United States Supreme Court in *Monell v. Department of Social Serv.*, 436 U.S. 658, 690-91 (1978), made clear that a municipality may be held liable pursuant to section 1983 *only* when the employee's unconstitutional conduct either "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" or follows a custom so well-settled that it represents official policy. The Supreme Court has adhered to the position that "municipal liability under section 1983 attaches only where a policy or custom can be ascribed to "the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. Cincinnati*, 475 U.S. 469, 483 (1986) (plurality opinion); *see also Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989); *St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988) (plurality opinion); *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 122 (1992).

A single incident of unconstitutional activity is insufficient for a §1983 claim. A practice is a "custom" only if it is "so persistent and widespread that it constitutes a permanent and well settled city policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). In addition to proving the act at issue, the plaintiff must demonstrate "the existence of the unconstitutional policy, and its origin," which are "separately proved" from the act. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985). The plaintiff must allege with at least some degree of particularity overt acts by defendants which support the plaintiff's claim. *Jones v. Community Redev. Agency*, 733 F.2d 646, 649 (9th Cir. 1984). Here, Plaintiffs have not made even a bare allegation that the individual officer's conduct conformed to official policy, custom, or practice.

***Neither a municipality nor defendants in their official capacities can be sued***

***for punitive damages.***

The complaint has no explicit indication of the capacity in which Defendants Stover and Miranda are being sued. However, Plaintiffs' §1983 claim alleges that the actions were done "under color of law." In addition, Plaintiffs ask for both compensatory and punitive damages. These factors indicate that Miranda and Stover are being sued individually as well as in their official capacities, because a municipality cannot be sued for punitive damages, nor can punitive damages be recovered from defendants in their official capacities. *Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 261, 271 (1981); *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991)(suit against a governmental officer in his official capacity is same as suit against governmental entity itself); *Shabazz v. Coughlin,* 852 F.2d 697, 700 (2nd Cir. 1988) (request for punitive damages indicates personal nature of lawsuit).

In *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985), the Court set forth the differences between the two types of actions as follows:

> Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. (Citation omitted) Official capacity suits, in contrast, "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n. 55 (1978).

A decision that an action is a personal capacity suit has important repercussions because a defendant named in his personal capacity has the right to assert a defense of qualified immunity, a defense not available to one named in his official capacity. *Owen v. City of Independence, Mo.*, 445 U.S. 622, 638 (1980).

***Plaintiffs cannot sustain their 42 U.S.C. section 1983 claim that Defendants "injur[ed], harm[ed], and discriminat[ed]" against them "for their acts."***

Plaintiffs allege Defendants violated their Fourth Amendment rights by "injuring,

1  harming, and discriminating" against them "for their acts" and for "wrongfully killing
2  Deangelo Rivera." Plaintiffs bear the burden of showing that "the right allegedly violated
3  was clearly established at the time of the alleged misconduct." *Anderson v. Creighton,*
4  483 U.S. 635, 639-40 (1987); *Sorrels v. McKee*, 290 F.3d 965, 970 (9th Cir. 2002). To
5  defeat qualified immunity, "the right allegedly violated must be defined at the appropriate
6  level of specificity before a court can determine if it was clearly established." *Wilson v.*
7  *Layne*, 526 U.S. 603, 615 (1999). This proof cannot be at a general level, such as that
8  the Fourth Amendment was violated, but instead must be specific. "The right the official
9  is alleged to have violated must have been 'clearly established' in a more particularized,
10 and hence more relevant, sense: The contours of the right must be sufficiently clear that
11 a reasonable official would understand that what he is doing violates that right."
12 *Anderson,* 483 U.S. at 640.

It is not clear what Plaintiffs mean when they allege that Defendants "injur[ed], harm[ed], and discriminat[ed]" against them "for their acts." What acts of Plaintiffs are Plaintiffs referring to? An alleged violation of a constitutional right has to be defined specifically before the Court can determine if it was clearly established.

***A valid notice of claim must contain the factual basis to support the amount demanded, so that the governmental entity can evaluate the claimed amount. Plaintiffs' Notice of Claim is deficient; the state law claims should be dismissed.***

Arizona Revised Statute §12-821.01(A) states:

A. Persons who have claims against a public entity or a public employee shall file claims with the person or persons authorized to accept service for the public entity or public employee as set forth in the Arizona rules of civil procedure within one hundred eighty days after the cause of action accrues. The claim shall contain facts sufficient to permit the public entity or public employee to understand the basis upon which liability is claimed. ***The claim shall also contain a specific amount for which the claim can be settled and the facts***

8

***supporting that amount.*** Any claim which is not filed within one hundred eighty days after the cause of action accrues is barred and no action may be maintained thereon.

(Emphasis added). The Arizona Supreme Court has interpreted this language to mean what it says: A valid notice of claim must contain not only a specific amount for which the claim can be settled, but the facts supporting the amount chosen.

> ....The attendant statutory obligation that claimants present "facts supporting that amount" requires that claimants explain the amounts identified in the claim by providing the government entity with a factual foundation to permit the entity to evaluate the amount claimed. This latter requirement ensures that claimants will not demand unfounded amounts that constitute "quick unrealistic exaggerated demands." *Hollingsworth v. City of Phoenix*, 164 Ariz. 462, 466, 793 P.2d 1129, 1133 (App.1990).

*Deer Valley Unified School Dist. No. 97 v. Houser*, 214 Ariz. 293, ¶ 9, 152 P.3d 490 (2007)(emphasis in original).

The purpose of the statute is to allow the entity and the employee the opportunity to "investigate and assess their liability, to permit the possibility of settlement prior to litigation, and to assist the public entity in financial planning and budgeting." *Crum v. Superior Court*, 186 Ariz. 351, 352, 922 P.2d 316, 317 (App. 1996).

The holding in *Deer Valley* was based on the failure of the claim to include a specific amount. Although the Supreme Court did not reach the "supporting facts" issue in *Deer Valley*, it made clear how it would have decided the issue had it been presented. The Court noted in footnote 3 that because claimant's letter did not include a specific sum, the question whether it also failed to provide facts supporting the amount claimed need not be reached. "We note, however," said the Court, "that the claim letter does not provide *any* facts supporting the claimed amounts for emotional distress and for damages to [claimant's] reputation." *Id.*, ¶ 11 (emphasis in original).

***Plaintiff fails to provide the factual basis necessary for the Defendants to***

9

***evaluate the lump sum demand for $7,000,000.00.***

The Notice of Claim fails to provide sufficient facts to support the amount demanded.

In a wrongful death case, the nature of the relationship between the decedent and the claimants is relevant. *Quinonez v. Andersen*, 144 Ariz. 193, 198, 696 P.2d 1342, 1347 (App. 1982)(where surviving husband regularity hit and threatened to divorce his wife, jury could conclude he suffered no loss by her death and could award him no damages.) Elements of a wrongful death case include (1) direct pecuniary loss, such as loss of financial support, *Katz v. Filandro*, 153 Ariz. 601, 605, 739 P.2d 822, 826 (App. 1987); (2) loss of love, affection, and companionship, *Mullen v. Posada Del Sol Health Care Ctr.*, 169 Ariz. 399, 400, 819 P.2d 985, 986 (App. 1991); (3) claimant's personal anguish and mental suffering (*Mullen*, 819 P.2d at 986; *Tucson v. Wondergem*, 105 Ariz. 429, 433, 466 P.2d 383, 387 (1970); (4) funeral expenses, *Reben v. Ely*, 146 Ariz. 309, 312, 705 P.2d 1360, 1363 (App. 1985); and (5) loss of inheritance. (*Salinas v. Kahn*, 2 Ariz. App. 181, 195, 407 P.2d 120, 134 (App. 1965).

These are just a few examples of the types of damages that the claimants could have factually described so as to explain the seven million dollar demand. Instead, the only statement in the Notice to explain the amount of damages is to be found on page 2: "As a result of the City of Tucson's failure to properly train and supervise Jeffrey Stover and his consequent unjustified and unreasonable use of deadly force, Mr. and Mrs. Rivera have been forever deprived of the company and support of a loving son." (SOF 13). That is it.

*Deer Valley* declared that the language of § 12-821.01(A) is "clear and unequivocal," and that "[c]ompliance with [the] statute is not difficult." 214 Ariz. at ¶ 9, 152 P.3d at 493. The Supreme Court recognized, "the Legislature intended the 1994 changes to establish *specific requirements that must be met* for a claimant to file a valid claim with a government entity." *Id.* at ¶ 20, 152 P.3d at 496 (2007) (emphasis added). As a guide to the lower

courts, the Supreme Court in *Deer Valley* went out of its way to emphasize that all of the specific requirements of the notice of claim statute, including the requirement that a settlement amount be supported by a factual basis, were to be applied as written. *Id.* at ¶¶ 11, 22, 152 P.3d at 494, 496.

Without supporting facts, the Riveras' seven million dollar demand is the type of "quick unrealistic exaggerated demand" condemned in *Deer Valley*.

***This case is easily distinguished from the recent appellate case of Jones v. Cochise County.***

*Jones v. Cochise County,* 2008 Ariz. App. LEXIS 102 (June 30, 2008), addresses the sufficiency of facts in a notice of claim in support of the amount demanded.

In *Jones*, these were the facts provided in support of the amount of damages:

> JC's "injuries kept in the hospital (sic) at University Medical Center in Tucson and at a rehabilitation center in Tucson from August 3, 2005 through September 7, 2005. Among those injures was a brain sheer injury which may have left him with permanent brain damage. He suffers from speaking difficulties, is easily fatigued, and suffers from severe migraines. His left knee also suffered damages to ligaments and bone. He has a severe gait impairment and has recently had surgery to attempt to repair the torn ligaments. He will spend many more weeks in physical therapy addressing this knee injury. He may have permanent range of motion limitations with that leg. His left hand was injured and continues to be painful and weak. His left collar bone sticks out and may be permanently disfigured. He also suffers from neck discomfort resulting from whiplash and has worked with a physical therapist to address these injuries.
>
> UMC has filed a balance billing hospital lien against JC in the amount of $128,118.48. With so many of his injuries unresolved, it is likely that JC's medical bills could easily exceed $250,000.00.
>
> Not only has JC suffered physical injury, he has been deprived of his senior year of high school and a normal progression to college and adulthood. He has to face the rest of his life with disabilities and impairments that before August 3, 2005 he would never have dreamed of. His disabilities currently make employment impossible. It is possible he will never be able

Rivera v. City of Tucson
District Court Case No. CV 07-109 TUC RCC

>to engage in full time employment or attend college.
>
>JC's parents have also been damaged "as a result of Deputy Matthew's action. . . "Ever since the race to UMC on August 3, 2005, the Joneses lives have been dominated with the care of their injured son. Mrs. Jones .... postponed return to her job for approximately 5 months in order to take care of JC and transport him to his doctors's appointments and therapy appointments.
>
>Mr. Jones .... used sick time / Family Medical leave time to sit watch over his son while he lingered in a coma in the hospital. The terror and fear that both Mr. and Mrs. Jones suffered was profound. The impact of JC's medical care and needs upon their family is great. ... the life the Joneses lead is dramatically different from the one they had before August 3, 2005.

(SOF 14).

The Court of Appeals found that those facts were sufficient to support the amount demanded. It noted that the claimants had listed the amount of medical expenses to date and "numerous facts, beyond [his] medical expenses, supporting his claimed amount." (*Jones*, p. 12). The Court also stated: "Given Jones' detailed recitation of JC's injuries and their effects on his life, as well as a description of the parents' situation, the statute's purpose has been met." (*Jones*, p. 14). The Rivera claimants, however, provided neither "numerous facts" nor a "detailed recitation." Here, the statute's purpose has <u>not</u> been met.

***Defendants contend that the recent appellate case of Backus v. State was incorrectly decided.***

In *Backus v. State*, 2008 Ariz. App. LEXIS 111 *23 (July 17, 2008), Division One of the Court of Appeals found that *any* facts supporting the amount demanded in a notice of claim, "no matter how meager," meet the requirements of A.R.S. § 12-821.01(A). *Backus* at P28,*23. The Appellate Court came to this conclusion after analyzing the *Deer Valley* case wherein, at footnote 3, the Arizona Supreme Court stated that: "We note, however, that the claim letter does not provide *any* facts supporting the claimed

12

Rivera v. City of Tucson
District Court Case No. CV 07-109 TUC RCC

amounts for emotional distress and for damages to McDonald's reputation." So what did *Deer Valley* consider to be the absence of ***any facts?***

In her notice of claim, McDonald, the *Deer Valley* claimant, sought damages for emotional distress and "damage to her reputation of employment" because, in retaliation for the claimant's efforts to resolve illegalities, the defendant school district had given her the choice of being fired or taking a position at less than half her anticipated salary. *Id.,* 214 Ariz. at 294-95, ¶ 2-3, 152 P3d at 491-92. Those who are fired or take a roughly 50 percent pay cut generally suffer emotional distress and a loss of "reputation of employment." But this obvious inference was <u>not</u> enough; it amounted to the absence of ***"any facts"*** to support ***the amount demanded***. *See Deer Valley,* 214 Ariz. at 297, n.3, 152 P3d at 494.

The Defendants in the case at bar contend that the *Backus* court misconstrued the judicial dicta in *Deer Valley*. Although the *Backus* court agreed that footnote 3 of *Deer Valley* provides guidance for future conduct for those subject to the requirements of A.R.S. §12-821.01(A), it read it to mean that <u>any, meager</u> facts were enough to meet the requirement of A.R.S. § 12-821.01(A). *Backus* at P28,*23. That interpretation is nonsensical given the Arizona Supreme Court's determination that the *Deer Valley* claimant failed to provide **any** facts despite her contention that, in retaliation for her efforts to resolve illegalities, the defendant school district had given her the choice of being fired or taking a position at less than half her anticipated salary.

The key to deciding this issue is found in the language of A.R.S. §12-821.01 itself: "The claim shall also contain a specific amount for which the claim can be settled ***and the facts supporting that amount***. (Emphasis added.)

The "facts" and the "amount" have to be considered together. For instance, saying "broken ankle" and requesting five million dollars would clearly not satisfy the plain

13

Rivera v. City of Tucson
District Court Case No. CV 07-109 TUC RCC

language of the statute, despite the suggestion in *Backus* that it would.

### *The Notice of Claim does not apportion the damages between the claimants.*

The Notice of Claim, specifying only a lump sum, was on behalf of two claimants, yet did not apportion the amount between them.

Counsel's research has turned up no case in Arizona in which this particular issue, as it relates to a notice of claim, has been decided. However, the failure to apportion the offer between the claimants deprived Defendants of the opportunity to make a reasoned assessment of their chances of bettering the offer at trial with respect to either claimant. Even if there had been a meaningful factual basis upon which to assess the offer as a whole, there still would not have been any way to assess the claim with respect to each offeror. The law on Rule 68 offers of judgment is analogous:

> An offeree presented with an unapportioned joint offer cannot make a meaningful choice between accepting the offer on any single claim or continuing the litigation to judgment on all claims. Imposing sanctions for failing to accept what is in effect an unspecified and unapportioned offer of judgment deprives the offeree of the opportunity to assess his or her chances of doing better at trial against one or more of the parties covered by the joint offer. On the other hand, requiring joint offers to be specifically allocated between multiple parties or claims places no greater burden on the party making the offer.

*Duke v. Cochise County*, 189 Ariz. 35, 41, 938 P.2d 84, 90 (App.1996) (unapportioned Rule 68 offer of judgment is invalid). *See also Quinonez v. Andersen*, 144 Ariz. 193, 196, 696 P.2d 1342, 1345 (App. 1982) (the proportion of damages for wrongful death beneficiaries is measured by the individual pecuniary loss suffered by each.).

### *The failure to file a timely, sufficient notice of claim requires dismissal of the state claims.*

Any claim that fails to comply with the notice of claim statute is barred. *A.R.S. § 12-821.01(A)*; *Falcon v. Maricopa County*, 213 Ariz. 525, ¶ 10, 144 P.3d 1254, 1256

Rivera v. City of Tucson
District Court Case No. CV 07-109 TUC RCC

(2006) ("Actual notice and substantial compliance do not excuse failure to comply with the statutory requirements of [the claim statute]."); *Salerno v. Espinoza,* 210 Ariz. 586, 588, 115 P.3d 626, 627 (App. 2005) (compliance with the notice of claim statute is mandatory and essential); *State Comp. Fund v. Superior Court* (*EnerGCorp, Inc.*),190 Ariz. 371, 376 948 P.2d 499, 504 (App. 1997) ("Under the claims statute, no action may be maintained when a plaintiff has failed to file a timely, sufficient notice of claim, including all elements required by law....").

### Negligence claim

Plaintiffs claim Defendants negligently violated a duty to: (1) exercise reasonable care in the investigation and attempted apprehension of Deangelo Rivera, (2) exercise reasonable care in protecting and keeping Plaintiffs from harm during that investigation and attempted apprehension, and (3) train and supervise Officer Stover. (Complaint, ¶ 10). "It is fundamental that before a plaintiff may recover in a negligence action she must show a duty owed by defendant to plaintiff, a breach of duty, and an injury proximately caused by the breach of the duty." *Nicoletti v. Westcor, Inc.*, 131 Ariz. 140, 639 P.2d 330, 332 (1982) (*quoting Kiser v. A. J. Bayless Markets, Inc.*, 9 Ariz. App. 103, 106-07, 449 P.2d 637, 640-41 (1969)).

There is no constitutional, statutory, or common law right that a private citizen has to require a public official to investigate or prosecute a crime. *Woods v. Miamisburg City Schs.,* 454 F. Supp.2d 868 (S.D. Ohio, 2003); *Doe v. Pocomoke City,* 745 F. Supp. 1137, 1139 (D. Md., 1990). These are discretionary public duties that are enforced by public opinion, policy, and the ballot. *Id.*  Defendants could find no authority in any state for the existence of a cause of action for negligent investigation except in the case of child abuse investigations, or when arising out of the arrest of a person later found to have been unjustly accused, in which case gross negligence is the standard. *See Landeros v. City*

15

Rivera v. City of Tucson
District Court Case No. CV 07-109 TUC RCC

*of Tucson*, 171 Ariz. 474, 475, 831 P.2d 850 (App. 1992),  Even if there were such a cause of action, nothing in this case suggests the investigation was done in a negligent manner.

### **Intentional infliction of emotional distress claim**

Arizona has turned to Restatement § 46 to define intentional infliction of emotional distress. *Ford v. Revlon, Inc.*, 153 Ariz. 38, 43, 734 P.2d 580, 585 (1987). This section provides: "(1) one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm."

Under Arizona law, an intentional infliction of emotional distress claim must be based on outrageous conduct that is "so extreme in degree, as to go beyond all possible bounds of decency, and be regarded as atrocious and utterly intolerable in a civilized community." *Mintz v. Bell Atlantic Systems Leasing*, 183 Ariz. 550, 905 P.2d 559, 563 (App. 1995).

The actions of the police in this case certainly cannot be seen as "so extreme in degree, as to go beyond all possible bounds of decency, and be regarded as atrocious and utterly intolerable in a civilized community."

### **Conclusion**

Summary judgment should be granted when, as here, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Ariz. R. Civ. P. 56.* Tucson Police Department is a non-jural entity and cannot be sued. There is no evidence Chief Richard Miranda directed the defendant officer's acts or personally cooperated in them.  The negligent investigation claim has no basis in the law. There is no evidence to support an intentional infliction of emotional distress claim.  Plaintiffs cannot meet their burden to show that Defendants violated their Fourth Amendment rights by "injuring, harming, and discriminating" against them "for their acts" because no such

Rivera v. City of Tucson
District Court Case No. CV 07-109 TUC RCC

right was clearly established at the time of the alleged misconduct. The Notice of Claim failed to provide facts in support of the amount demanded thus requiring dismissal of the state law claims.

DATED this 30th day of September, 2008.

KIMBLE, NELSON, AUDILETT & KASTNER, P.C.

/s/ Daryl Audilett

_____
Daryl A. Audilett, Esq.
Rebecca Parker-Perry, Esq.
Attorneys for Defendants Stover, City of Tucson, Tucson Police Department and Miranda

COPY of the foregoing filed this
30th day of September, 2008 to:

Court Clerk
UNITED STATE DISTRICT COURT
405 W. Congress Street
Tucson, AZ 85701

Copy of the foregoing mailed this
30th day of September, 2008 to:

Steven G. Sandoval, Esq.
SANDOVAL & ST. CLAIR, P.L.C.
177 N. Church Avenue, Suite 1008
Tucson, AZ 85701
**Attorney for Plaintiffs**

By MLA
#0841