**KIMBLE, NELSON, AUDILETT & KASTNER, P.C.**
335 NORTH WILMOT, SUITE 500
TUCSON, ARIZONA 85711-2636
(520) 748-2440/FAX (520) 748-2469

Daryl A. Audilett, Esq.
State Bar No. 009007; PCC No. 2036
Email: daa@audilettlaw.com
Rebecca Parker-Perry, Esq.
State Bar No. 010692
Attorneys for Defendants Stover, City of Tucson,
Tucson Police Department and Miranda

**IN THE UNITED STATES DISTRICT COURT**

**IN AND FOR THE STATE OF ARIZONA**

| | |
|---|---|
| MARIA MARGARITA RIVERA and ROBERT C. RIVERA, wife and husband,<br><br>Plaintiffs,<br><br>v.<br><br>JEFF STOVER and CAROLINE STOVER, husband and wife, CITY OF TUCSON, a body politic, CITY OF TUCSON POLICE DEPT. POLICE CHIEF RICHARD MIRANDA, JOHN AND JANE DOES 1-5, FICTITIOUS DEFENDANTS,<br><br>Defendants. | **NO. CV-07-109-TUC RCC**<br><br><br><br>**DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>(ORAL ARGUMENT REQUESTED)<br><br>(Assigned to Judge Raner C. Collins) |

Plaintiffs must present sufficient admissible evidence supporting any claimed factual dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e), Fed. R. Civ. P. Plaintiffs have shown they cannot do so. There is no genuine issue of material fact and Defendants are entitled to summary judgment as a matter of law.

Plaintiffs begin their Response to the Motion for Partial Summary Judgment by setting forth a "summary of facts." That summary is not a response to Defendants' separate statement of facts, but rather is pulled out of Plaintiffs' complaint, and contains not only factual assertions, but legal conclusions as well. The "summary of facts"

contains no citations to a separate statement of facts in support of the assertions made, in violation of LRCiv. 56.1(e). Plaintiffs' "summary of facts" should be disregarded.

### *I. The Tucson police department is a non-jural entity and thus not a proper defendant.*

Plaintiffs have not shown the Tucson police department to be a jural entity, separate from the City of Tucson. No Arizona statute empowers the Tucson police department to sue or to be sued. The police department is an administrative arm of the City, with no separate legal identity.

Plaintiffs cite *Munger v. City of Glasgow Police Dep't.*, 227 F.3d 1082 (9th Cir. 2000), a case from Montana, as authority for naming the Tucson police department as a defendant. Indeed, the *Munger* court treated the Glasgow police department as a jural entity. However, the issue of whether the police department was a jural entity was not raised in *Munger*. Even if it had been, Montana law is not authority for allowing the Tucson police department to be named as a defendant in the case at bar.

An Arizona case that specifically dealt with this issue is *Wilson v. Maricopa County*, 2005 U.S. Dist. LEXIS 28021 *3-6 (November 15, 2005). In *Wilson*, the Maricopa County sheriff's office filed a motion to dismiss, arguing that it is not a jural entity. The court granted the motion, concluding that the plaintiff had not shown the sheriff's office to be a jural entity separate from the county.

### *II. Chief Richard Miranda is not personally liable for the acts of members of the police force. Plaintiffs have not shown - and cannot show - a causal connection between Chief Miranda's action or inaction and the alleged constitutional harm.*

Plaintiffs offer no evidence that Chief Miranda directed any unconstitutional acts against them or that he cooperated in any such acts. Plaintiffs offer no evidence that Officer Stover engaged in any unconstitutional act, let alone that Miranda knew of any constitutional violations or that he failed to act to prevent them.

Plaintiffs assert that Chief Miranda is liable to them for an alleged Fourth Amendment excessive force violation by Officer Stover because Miranda had knowledge that Stover had been involved in three shootings in a period of twenty months, and was aware of Stover's alleged "predisposition for overly aggressive behavior" because "Stover had previously been dismissed from the police department for said type of behavior." (Response, at 2:14-18). None of Plaintiffs' "facts" in support of these assertions against Chief Miranda has statement of fact record cites. *See* LRCiv. 56.1(e). Conclusory allegations are insufficient to support a claim under § 1983. *Jones v. Community Redev. Agency*, 733 F.2d 646, 649 (9th Cir. 1984). In the portion of their Response that addresses Chief Miranda's alleged liability, Plaintiffs point to no evidence in support of their position. In the portion of the Response that addresses alleged City liability, Plaintiffs point to inadmissible documents and attempt to tie them to Chief Miranda to support liability. (See argument below, section III). Even if they were admissible, none of those documents sets forth specific facts showing a genuine issue for trial, as required by Rule 56 (e)(2), Fed. R. Civ. P.

Plaintiffs claim that "[t]here are numerous cases holding the police chief of police departments responsible for the acts which led to the deprivation of decedents' constitutional rights when the chief of police as top policy maker of his department had knowledge and failed to stop the acts or inactions of the defendant officer." (Response, p. 2:19-22). Plaintiffs then cite one 9th Circuit case from California, one 1st Circuit case, and two 5th Circuit court cases for the proposition that a police chief can be held liable for his or her acts or omissions. (Response, p. 2:19-28, p. 3:1). There is no dispute that a police chief can be held liable for the unconstitutional acts of a subordinate officer under certain circumstances, but none of those circumstances appears here. There is simply no evidence that Officer Stover's actions were unconstitutional, or even if they were, that

Rivera v. City of Tucson
US District Court Case No. CV 07-109 TUC RCC

Chief Miranda knew of them and failed to act to prevent them. None of the cases cited by Plaintiff is applicable to the facts at bar.

Chief Miranda should be dismissed from this lawsuit.

***III.   A municipality may not be held liable for the unconstitutional acts of its employees unless those acts either implemented or executed a policy statement, ordinance, regulation, or decision that was officially adopted, or follow a well-settled custom.***

Although nowhere in the Complaint does the claim appear, Plaintiffs' Response asserts that the alleged constitutional violations were the result of the City's customs.

In addition to proving the act at issue, Plaintiffs must demonstrate "the existence of the unconstitutional policy, and its origin," which are "separately proved" from the act. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985). Plaintiffs have made no attempt to set forth this required proof.

Plaintiffs argue that the police department and Chief Miranda had knowledge of Officer Stover's alleged "prior disciplinary problems and overly aggressive behavior," and that this "ongoing pattern clearly indicates that this had become a custom of the City of Tucson..." (Response, at 4:1-12). This argument is nonsensical. Stover's alleged disciplinary problems and the City's alleged knowledge of same would not be a "custom." To qualify as a "custom" for purposes of § 1983 liability, there must be a practice that is "so persistent and widespread that it constitutes a permanent and well settled city policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996); *Monell v. Department of Social Serv.*, 436 U.S. 658, 690-91 (1978)(the alleged practice or custom must be so well-settled that it represents official policy). To "support" their (nonsensical) argument, Plaintiffs rely on inadmissible exhibits: their Exhibits 1, 1a, 1b, 1c, and 2, all of which lack foundation, are hearsay, and are otherwise irrelevant, and none of which can be the basis for a denial of summary judgment. *See* Rule 56(e), Fed. R. Civ. P. (pleader is to set forth facts as would be admissible in evidence); Rule 402, Fed. R. Evid. (Irrelevant evidence is inadmissible);

4

Rivera v. City of Tucson
US District Court Case No. CV 07-109 TUC RCC

1. Rule 404(b), Fed. R. Evid. (character evidence is inadmissible to prove conduct).

2. Plaintiffs' inadmissible exhibits in "support" of their assertion that the City and Chief Miranda are liable purport to be: Stover's 2000-2001 annual evaluation showing he exceeded full performance in four areas, met performance in four areas, and was below full performance in one area (interpersonal skills) (Ex. 1); a Notice of Intent to Discharge dated September 1996 (nine and a half years before the Rivera incident) giving Stover the opportunity to attend a conference to determine if termination from the police department would be appropriate (also labeled Ex. 1); an "Attachment A", dated 1996 which - though it's not clear - is possibly related to the Notice of Intent to Discharge (Ex. 1a); a Personnel Action Request Form suspending Stover pending review of the assault charge (also Ex. 1a); a Notice of Intent to Suspend pending investigation, dated August 8, 1996 (Ex. 1b); a Performance Evaluation from 1995-1996 indicating that Stover had been involved in several questionable search and seizure incidents (but with no allegation of physical confrontations)(also Ex. 1b); a document that appears to be part of an evaluation from 1996 (Ex. 1c); a police report from September 29, 2005 (Ex. 2); and a Board of Inquiry Report regarding the May 2007 Canez shooting case, which states that the Pima County Attorney's Office concluded the "shooting was legally justified." (also Ex. 2). These documents all lack foundation, contain hearsay, and hearsay within hearsay. None are self-authenticating. They are simply irrelevant to any issue before the Court. They cannot be the basis for the denial of a motion for summary judgment.

Plaintiffs' entire premise for Defendants' liability is based on these inadmissible documents. Plaintiffs state that Officer Stover was criminally charged and was dismissed in 1996 from the police department (ten years before the Rivera incident), as though that proves Plaintiffs' inadequate training and supervision claim or the alleged "prior

Rivera v. City of Tucson
US District Court Case No. CV 07-109 TUC RCC

1 disciplinary problems." As an aside, Plaintiffs' "evidence" states that Officer Stover was
2 *suspended*, pending investigation of the criminal charge. Plaintiffs decline to mention the
3 criminal charge was dismissed. Obviously, Officer Stover was fully reinstated as a
4 Tucson police department officer.

5 Plaintiffs repeatedly state that Officer Stover "killed three separate individuals in
6 three separate incidences over approximately a 20-month time span," attempting to infer,
7 apparently, that three shootings are evidence of improper training or that Chief Miranda
8 and the City knew of Stover's alleged "overly aggressive behavior." Plaintiffs, although
9 not informing the Court when the Rivera shooting occurred in relation to the other two,
10 do at least acknowledge that all three were found to be legally justified. (Response, p.
11 4:6-9).

12 Even if these numerous exhibits were legally cognizable, they certainly do not
13 evidence a City policy or custom to support Plaintiffs' claims.

14 To withstand summary judgment in a § 1983 claim against a municipality, material
15 facts must be presented that a policy expressly sanctioned, enacted, or authorized by the
16 municipality has led to the alleged injury. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480
17 (1986)*; Monell v. Dep't of Social Services*, 436 U.S. 658, 690-91 (1978). The factual
18 allegations "must be enough to raise the right to relief above the speculative level." *Bell*
19 *Atlantic v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1964-65 (2007). Plaintiffs have made
20 it clear that they cannot provide facts to support their claim against the City. They offer
21 no evidence from which a reasonable fact-finder could conclude that the need for more
22 or different training was so obvious, and the inadequacy so likely to result in a violation
23 of constitutional rights, that the City's policymakers can reasonably be said to have been
24 deliberately indifferent to the needs of individuals like DeAngelo Rivera or Plaintiffs by
25 failing to train Officer Stover. *See City of Canton v. Harris*, 489 U.S. 378, 388 (1989).
26

Rivera v. City of Tucson
US District Court Case No. CV 07-109 TUC RCC

### IV. Neither a municipality nor defendants in their official capacities can be sued for punitive damages.

Plaintiffs claim that municipal immunity from punitive damages can be waived if the entity voluntarily agrees to indemnify its employees. Plaintiffs state (without support) that the City is required to cover the costs of litigation against Stover, thus it has waived the right to claim it cannot be liable for punitive damages. Plaintiffs cite three cases as authority for their assertion: *Cornwell v. Riverside*, 896 F.2d 398 (9th Cir. 1990); *Kolar v. County of Sangamon*, 756 F.2d 564 (7th Cir. 1985), and *O'Neill v. Krzeminski*, 839 F.2d 9 (2d Cir. 1988). In *Cornwell*, a California case, the City offered to pay the punitive damages awarded in a suit against a defendant police officer. The court simply noted that there is no federal prohibition against a city paying if it chooses to do so. *Kolar* is an Illinois case. Illinois had a statute that specifically required a public entity to indemnify an employee for both compensatory and punitive damage awards. *O'Neill* is a Connecticut case. Again, a specific indemnification agreement was in place between the police and the city wherein the city accepted responsibility to pay compensatory and punitive damage awards. These cases do not support Plaintiffs' claim.

First, Plaintiffs must show official policy or custom under a Monell theory before any recovery may be had from the City, which they have shown they cannot do. Second, Plaintiffs cite no Arizona authority that requires the City to pay any punitive damages award against one of its employees.

Plaintiffs further argue that Officer Stover is personally liable for punitive damages because his actions were extreme and outrageous. No facts support Plaintiffs' Fourth Amendment claim, let alone an award of punitive damages against Officer Stover.

### V. Qualified Immunity

Qualified immunity is only to be considered if the facts taken in the light most favorable to the plaintiffs establish a constitutional violation. *Saucier v. Katz*, 533 U.S.

7

Rivera v. City of Tucson
US District Court Case No. CV 07-109 TUC RCC

194, 201 (2001). Plaintiffs' Complaint alleges a 42 U.S.C. § 1983 claim that Defendants "injur[ed], harm[ed], and discriminat[ed]" against them "for their acts."  Plaintiffs seem to have abandoned that unclear claim in favor of now arguing that Officer Stover violated the Fourth Amendment by using excessive force against DeAngelo Rivera.

A police officer can use an amount of force that is objectively reasonable in light of the circumstances facing him. *Blankenhorn v. City of Orange*, 485 F.3d 463, 477 (9th Cir. 2007). Factors to consider include the severity of the crime at issue (here, a domestic violence that began with the firing of bullets through Serena Hernandez's car windshield); whether the suspect was actively resisting arrest, as Rivera was; and whether the suspect posed an immediate threat to the safety of the officer or others. *Graham v. Connor,* 490 U.S. 386, 396 (1989).  The inquiry is not limited to these factors, but the reasonableness of the seizure must be assessed by considering the objective facts and circumstances that confronted the officer. *Id.*  Whether an officer used excessive force "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* The determination "must embody allowance for the fact that police officers are often forced to make split-second judgments -- in circumstances that are tense, uncertain, and rapidly evolving -- about the amount of force that is necessary in a particular situation." *Id.* at 396-97.

Officer Stover was forced to make an instantaneous decision.  At the moment the shots were fired, he had an objectively reasonable belief that Rivera presented an immediate threat of death or serious physical injury to him and to Serena Hernandez. Rivera was resisting arrest, refusing to answer whether he had a gun, and approaching Stover with a fighting stance. (SOF 7-10).  Stover then saw  guns in Rivera's waistband and saw Rivera pull a gun out and swing it towards him. (SOF 11).  Officer Rowe, the first officer on the scene immediately after the shooting, saw, as soon as he entered the apartment, a handgun on the floor a few feet away from Rivera. (Reply SOF 15).  When

Officer Rowe arrived in the apartment, two women were inside with Officer Stover and Rivera. (Reply SOF 16). Officer Rowe escorted them from the apartment. (Reply SOF 17).

Officer Stover's decision to fire at Rivera is the type of "split-second judgment" which courts should not second-guess. *See Graham,* 490 U.S. at 396-97.

**VI.    *There is no basis for Plaintiffs' Negligence claim***

The three bases for the negligence claim set out in Plaintiffs' Complaint are that Defendants allegedly violated a duty to: (1) exercise reasonable care in the investigation and attempted apprehension of Deangelo Rivera, (2) exercise reasonable care in protecting and keeping Plaintiffs from harm during that investigation and attempted apprehension, and (3) train and supervise Officer Stover. (Complaint, ¶ 10).

Plaintiffs' Response claims that the "most important basis" of their negligence claim is this: "by improperly preparing and training Officer Stover at the scene and by failing to stop Defendants from killing DeAngelo Rivera when it was not necessary." (Response, p. 12:20-23). There is, however, absolutely no evidence of any improper training. Furthermore, the shooting was justified. Plaintiffs claim that Officer Stover failed to properly follow city policies and procedures. (Response, p. 13:1-2). Again, there is no evidence of this and Plaintiffs make no effort to set forth what policies and procedures were allegedly not followed. Plaintiffs also claim that Defendants failed to exercise reasonable care in the investigation and attempted apprehension of decedent. That issue has no merit either; it was fully addressed in the Motion.

**VII.    *There is no merit to the intentional infliction of emotional distress claim.***

Plaintiffs assert that Officer Stover's actions were extreme and outrageous. There is no merit to that claim. An intentional infliction of emotional distress claim must be based on outrageous conduct that is "so extreme in degree, as to go beyond all possible bounds of decency, and be regarded as atrocious and utterly intolerable in a civilized

Rivera v. City of Tucson
US District Court Case No. CV 07-109 TUC RCC

community." *Mintz v. Bell Atlantic Systems Leasing*, 183 Ariz. 550, 905 P.2d 559, 563 (App. 1995). Officer Stover shot DeAngelo Rivera when he saw Rivera reach for the gun in his waistband.

**VIII.**   ***The Notice of Claim is defective.  The state law claims are barred.***

Plaintiffs did not set forth sufficient facts in support of their Notice of Claim demand for seven million dollars as required by A.R.S. § 12-821.01.A. This requirement ensures that claimants will not demand unfounded amounts that constitute "quick unrealistic exaggerated demands." *Hollingsworth v. City of Phoenix*, 164 Ariz. 462, 466, 793 P.2d 1129, 1133 (App.1990). Plaintiffs claim that it would have been difficult to come up with a much more detailed recital of the facts and circumstances involved without conducting discovery. (Response, p. 9:17-20).

Plaintiffs' Notice of Claim only stated that as a result of the City of Tucson's alleged failure to properly train and supervise Officer Stover and his consequent use of deadly force, "Mr. and Mrs. Rivera have been forever deprived of the company and support of a loving son." Most certainly a more detailed recital of the facts could have been made than that without having to conduct discovery. As pointed out in the motion, the Plaintiffs could easily have described the nature of the relationship between them and their son; they could have set forth the financial costs of the death including funeral expenses; they could have stated whether the decedent provided any financial support to them; and they could have set forth any financial costs incurred as a result of their mental suffering. All of these are relevant to a wrongful death claim, but none was provided.

Plaintiffs' Response does not address Defendants' argument that the Notice was also defective because it failed to apportion the damages between them.

Rivera v. City of Tucson
US District Court Case No. CV 07-109 TUC RCC

## *CONCLUSION*

Summary judgment should be granted when, as here, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Ariz. R. Civ. P. 56 (e)(2).* The Tucson police department is a non-jural entity and cannot be sued. There is no evidence Chief Richard Miranda directed the defendant officer's acts or personally cooperated in them or that any act or inaction by him was a cause of any constitutional violation. The negligent investigation claim has no basis in the law. There is no evidence to support an intentional infliction of emotional distress claim. Plaintiffs cannot meet their burden to show that Defendants violated their Fourth Amendment rights by "injuring, harming, and discriminating" against them "for their acts" because no such right was clearly established at the time of the alleged misconduct. There is no evidence that Plaintiffs' constitutional rights were violated. The amount of force used by Officer Stover was objectively reasonable given the circumstances facing him. The Notice of Claim failed to provide facts in support of the amount demanded thus requiring dismissal of the state law claims.

DATED this 8th day of January, 2009.

KIMBLE, NELSON, AUDILETT & KASTNER, P.C.

/s/ Daryl Audilett

_____
Daryl A. Audilett, Esq.
Rebecca Parker-Perry, Esq.
Attorneys for Defendants Stover, City of Tucson,
Tucson Police Department and Miranda

COPY of the foregoing filed this
8th day of January, 2009 to:
Court Clerk
UNITED STATE DISTRICT COURT
405 W. Congress Street
Tucson, AZ 85701

Rivera v. City of Tucson
US District Court Case No. CV 07-109 TUC RCC

Copy of the foregoing mailed this
8th day of January, 2009 to:

Steven G. Sandoval, Esq.
SANDOVAL & ST. CLAIR, P.L.C.
177 N. Church Avenue, Suite 1008
Tucson, AZ 85701
**Attorney for Plaintiffs**

By Meghan Summers
#0841