IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Robert and Maria Rivera, as husband and wife;<br><br>    Plaintiffs,<br><br>vs.<br><br>Officer Jeff Stover ; et al. ,<br><br>    Defendants. | No. CV 07-109-TUC-RCC<br><br>**ORDER** |

Pending before this Court is Defendant's Motion for Partial Summary Judgment.(Doc. #42). The briefing is complete. The Court has heard oral arguments. The Court now rules.

**PROCEDURAL BACKGROUND**

This action was removed from Pima County Superior Court on March 6, 2007.[1] On February 14, 2006, Plaintiffs Maria and Robert Rivera filed a civil action asserting claims against the Defendants Jeff and Caroline Stover, as husband and wife, City of Tucson, Tucson Police Department, and Tucson Police Department Chief Richard Miranda. The Plaintiffs allege that the Defendants' conduct led to the wrongful death of

---

[1] This Court has federal question jurisdiction over the Section 1983 claim. The court also has supplemental jurisdiction over the two state claims because it arise out of same transaction and occurrence. 28 U.S.C. §1367.

1  Deanglo Rivera in violation of 42 U.S.C. §1983. Plaintiffs also assert state law claims of
2  negligence and intentional infliction of emotional distress.

3  **FACTUAL BACKGROUND**

4  On February 15, 2006, Tucson Police Officer Jeff Stover was dispatched to 6200
5  S. Campbell Ave., Apt. 2303, Tucson, Arizona. Officer Stover was responding to a 911
6  emergency call. It is disputed whether Officer Stover was told about suspect's past
7  criminal history. It is disputed whether lessee of the apartment , Tanya Severson showed
8  him bullet holes in Serana Hernandez's car windshield. The timeline of events that led up
9  to the shooting of DeAngelo Cazares Riveria is also disputed. It is undisputed that
10 Officer Stover shot and killed the decedent.

11 **STANDARD OF REVIEW**

12 Summary judgment is appropriate when the undisputed material facts, taken in a light
13 more favorable to the non-moving party, demonstrate the moving party is entitled to
14 judgment in its favor as a matter of law. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 106
15 S. Ct. 2505 (1986). The Court does not make credibility determinations or weigh the
16 evidence. The Court disregards all evidence that the jury is not required to believe. If
17 evidence supporting the moving party is uncontradicted and unimpeached, it should be given
18 appropriate credence. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 149-51.
19 "In the context of qualified immunity, determinations that turn on questions of law, such as
20 whether the officers had probable cause or reasonable suspicion to support their actions, are
21 appropriately decided by the court." *Hopkins v. Bonvicino*, 573 F.3d 752,762-63 (9th Cir.
22 2009)(internal citation omitted). A district court should not grant summary judgment if there
23 is a genuine dispute as to the facts and circumstances that surround the claimants' actions,
24 and the officer's knowledge and conduct. *Id* at 763.

25 **DISCUSSION**

26 Defendants advance several arguments in their motion for summary judgement. First,
27 Defendants claim that the Tucson Police Department ("TPD" ) should be dismissed as a party
28 to this dispute because TPD is not a jural entity. Second, Defendants claim Chief Richard

1  Miranda is not personally liable for actions of the members of the police force because no
2  evidence demonstrates that he participated in, directed his subordinates, or knew of the
3  alleged constitutional violation and failed to act.  Third, Defendants contends that the City
4  of Tucson is not liable because the employee at issue did not act in furtherance of an official
5  policy of the city.  Fourth, Defendants contend that they can not be found liable for punitive
6  damages. Fifth, the Defendants contend that the state law claims should be dismissed because
7  the Plaintiffs did not follow the appropriate administrative procedures. Lastly, the Defendants
8  argue in the alternative, if the Court finds that the state law claims are not barred, the
9  Plaintiffs are unable to show that a reasonable juror could find for them.

10 *TUCSON POLICE DEPARTMENT'S LIABILITY*

11      Defendants contend that the Tucson Police Department can not be sued because it is
12 a non-jural entity.  Defendants argue that under Arizona l aw, non-jural entities are not
13 subject to suit.  Defendants rely on *Grande v. Casson*, 50 Ariz. 397, 72 P.2d 676 (1937)
14 *overruled in part on other grounds in State ex rel. Morrison v. Thelberg,* 87 Ariz. 318, 350
15 P.3d 988 (Ariz. 1960), *Kimball v. Shofstall*,  17 Ariz. App. 11, 13, 494 P.2d 1357, 1359
16 (1972)(finding that the State Board of Education is not an autonomous body with right to be
17 sued); and  *Yamamoto v. Santa Cruz County Bd. of Supervisors* , 124 Ariz. 538 , 539, 606
18 P.2d 28, 29(App. 1979)(holding that an action cannot be brought against a state agency that
19 does not have the power to sue).  This Court agrees.

20      Plaintiffs argue that *Munger v. City of Glasgow Police Dep't*, 227 F.3d 1082, 1087
21 (9th Cir. 2000)  is applicable. In *Munger*, the Court stated that a police department may be
22 liable for actions of its officers, if the plaintiff can demonstrate a constitutional deprivation
23 and show that the deprivation was caused as result of police department custom or policy.
24 *Id.* at 1087.  This case is not precedent on the issue facing this Court.  The *Munger* Court did
25 not address whether the City of Glasgow Police Department was a jural entity.  Therefore,
26 this case is inappropriate to follow.  Furthermore, Plaintiffs' argument is unpersuasive in
27 light of various courts in the District of Arizona finding that a police department is not a jural
28 entity. *See Williams v. City of Mesa Police Dept.* , 2009 WL 2568640 *2,*3 (D. Ariz. 2009)(

1  stating "[n]umerous courts have held that a police department is not a jural entity that is
2  capable of suing and being sued, but rather a subdivision of the political entity to which it
3  belongs.")(internal citation omitted).

4  The Court finds that the Defendant Tucson Police Department is not the appropriate
5  party to the lawsuit because it is not a jural entity. TPD lacks the capacity to sue or to be
6  sued. TPD is merely an agency of the City. Therefore, the Court finds as a matter of law,
7  Tucson Police Department is not a valid party to this lawsuit.

8  *CHIEF MIRANDA'S LIABILITY*

9  Defendants contend that Plaintiffs' allegation against Chief Miranda should be
10 rejected because the allegations are insufficient to support a claim under Section 1983.
11 Defendants contend the evidence offered by Plaintiffs does not show Chief Miranda ,as
12 supervisor, had any involvement in the alleged constitutional deprivation caused by his
13 subordinates. *Ybarra v. Reno Thunderbird Mobile Home Village*, 723 F.2d 675, 680.
14 Plaintiffs argues that Chief Miranda is liable because his inaction was the direct cause of
15 their son's death. Plaintiffs contend that Chief Miranda had knowledge of Officer
16 Stover's propensity for violence because Stover killed three individuals in three separate
17 incidences in a 20 month time span.

18 Under Section 1983, a supervisor is liable for constitutional violations of his
19 subordinates if the supervisor participated in or directed the violation, or knew of the
20 violation and with deliberate indifference failed to act to prevent them. *Wilson v. Seiter,*
21 *501 U.S. 294, 303* (1991). An official who has failed to prevent a constitutional violation
22 by inadequately training, supervising or investigating his subordinates may be liable
23 under Section 1983 if the plaintiff shows that the supervisor possessed the requisite
24 culpable state of mind and a casual connection between the supervisor's action or inaction
25 and the alleged constitutional harm. *Redman v. San Diego*, 942 F.2d 1435, 1446-1447(9th
26 Cir. 1991).

27 The question of liability turns on the issue of whether the evidence of Officer's
28 past bad prior acts is admissible? Defendants contend that the evidence offered by the

- 4 -

plaintiffs are merely conclusory allegations, which are insufficient to support a claim under Section 1983. *Jones v. Community Redev. Agency*, 733 F.2d 646, 649 (9th Cir. 1984)( holding that allegations that are 'conclusional' and 'unsupported by any facts' is not sufficient to withstand a motion for summary judgment).

Here, Plaintiffs offer Tucson Police Department records that show Officer Stover in the past has been found to use unreasonable force.  Also, Plaintiffs offer evidence that Officer Stover has killed three Latino men in three separate incidences over a 20 month time span.  Plaintiffs contend one could infer from this evidence that Officer Stover has a propensity of using unreasonable force toward Hispanic men and Chief Miranda as supervisor did not take reasonable precautions to address this matter. The Court finds that the evidence offered may not be admitted into evidence, for numerous reasons that the Court will wait until trial to determine. However, even if the Court was to ignore the evidentiary rule problems, this evidence is insufficient to show that Chief Miranda took direct action in the death of Deanglo Rivera or acted with deliberate indifference in training and supervision of Officer Stover. Therefore, the Court finds that Chief Miranda is not liable as a matter of law for Officer Stover's alleged constitutional violations.

*CITY OF TUCSON'S MUNICIPAL LIABILITY*

Defendants contend that the City of Tucson is not liable for Officer Stover's action because his alleged unconstitutional action was not a result of an employee executing a city policy or regulation.

"Local governments cannot be held liable under § 1983 on a theory of respondent superior,[however] they can be held liable for constitutional deprivations covered by their policies or customs." *Monell v. New York City Dep't of Social Services*, 436 U.S. 658, 690-91, 98 S.Ct. 2018, 2035-36, 56 L.Ed.2d 611 (1978).  To qualify as a "custom" for purpose of Section 1983 liability, there must be a practice that is "so persistent and widespread that is constitutes a permanent and well settled city policy". *Trevino v. Gates*, 99 F.3d 911, 918 ( 9th Cir. 1996).  A municipality may be liable for a failure to train an employee who causes a constitutional violation, if the failure to train amounts to

deliberate indifference to the rights of person that the employee meets. *Long v. County of L.A.*, 442 F.3d 1178, 1186 (9th Cir. 2006)(internal citation and quotations omitted).   To show deliberate indifference on behalf of the municipality, the plaintiff must show (1) "[t]he continued adherence by policymakers 'to an approach that they know or should know has failed to prevent tortious conduct by employees;' " or (2) that a violation of constitutional rights "is a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations." *Id.* (quoting *Bd. of the County Comm'rs v. Brown*, 520 U.S. 397, 407, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997))

Here, Plaintiffs contend that Officer Stover's multiple shooting incidents demonstrate an on-going pattern that speaks to a lack of discipline in the department that would gives rise to a custom of the City of Tucson. A single incident of this one officer's alleged unconstitutional activity is insufficient to qualify as custom. *Trevino, 99 F.3d at 918*. Plaintiffs also fails to demonstrate the existence of unconstitutional policy, which is proved separately from the act. *Id.* at 918-919. As a result, the Court finds that as matter of law, City of Tucson is not liable for Officer Stover's alleged unconstitutional acts.

*PUNITIVE DAMAGES*

1. ARISING FROM SECTION 1983

Defendant Stover contends that he can not be sued for punitive damages because he is being sued in his official capacity. "Suits against a governmental officer in his official capacity is the same as a suit against governmental entity." *Larez v. City of Los Angeles*, 946 F.2d 630,646 (9 th Cir. 1991). The general rule is that municipalities are immune from punitive damages under 42 U.S.C. §1983. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247,273, 101 S.Ct. 2748, 2762 (1981). But, " a jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil, motive, or intent or when it involves a callous indifference to federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 34, 103

1  S.Ct. 1625, 75 L.Ed.2d 632 (1983).  Therefore, Rivera may seek punitive damages against
2  the officer under § 1983.
3        2. ARISING FROM STATE LAW CLAIMS
4        "Under Arizona law, neither a public entity nor a public employee acting within
5  the scope of his employment is liable for punitive or exemplary damages." *Ayala v.*
6  *Mohave County, Ariz.*,2008 WL * 4849963 citing A.R.S. § 12-820.04.  As a result,
7  plaintiffs can not seek punitive damages for their state law claims.
8  *QUALIFIED IMMUNITY*
9        Given the Court has dismissed the City of Tucson, the Tucson Police Department
10  and Chief Miranda, the only remaining defendant that may raise the qualified immunity
11  defense is Officer Stover. Defendant contends he is entitled to qualified immunity
12  because the plaintiffs have failed to articulate a specific valid constitutional right.
13        The law of qualified  immunity is a two step process.  First, the court determines
14  whether the facts "show the officer's conduct violated a constitutional right." *Saucier v.*
15  *Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). If the alleged conduct
16  did not violate a constitutional right, then the defendants are entitled to immunity and the
17  claim must be dismissed. *Id.* However, if the alleged conduct did violate such a right, then
18  the court must determine "whether the right was clearly established" at the time of the
19  alleged unlawful action. *Id*. A right is clearly established if "a reasonable official would
20  understand that what he is doing violates that right." *Id.* at 202.  If the right is not clearly
21  established, then the officer is entitled to qualified immunity. While the order in which
22  these questions are addressed is left to the court's "sound discretion," "it is often
23  beneficial" to perform the analysis in the sequence outlined above.  *Pearson v. Callahan*,
24  --- U.S. ----, 129 S.Ct. 808, 818, 172 L.Ed.2d 565 (2009). Where a claim of qualified
25  immunity is to be denied, both questions must be answered. *Hopkins v. Bonvicino, 573*
26  *F.3d 752 , 762-763 (9 th Cir. 2009)*
27        The right allegedly implicated in this cases is the Fourth Amendment's  prohibition
28  on the use of excessive force.  This  is a clearly established right. *Hansen v. Black,* 885

1 F.2d 642 (9th Cir.1989). Excessive force claims are analyzed under the Fourth
2 Amendment's reasonableness standard. *Graham v. Connor,* 490 U.S. 386, 388, 109 S.Ct.
3 1865, 1867-68, 104 L.Ed.2d 443 (1989). Under the Fourth Amendment, police may only
4 use such force as is objectively reasonable under the circumstances. *Id.* at 397. The
5 reasonableness inquiry is objective, without regard to the police officer's motive or intent.
6 *Billington v. Smith,* 292 F.3d 1177, 1185.

7 Reasonable force is force that is necessary to secure the safety of the officers
8 during a search or arrest. *Graham,* 490 U.S. at 395. Police officers are not required to
9 pursue the least intrusive degree of force when force is reasonably necessary. *Cady v.*
10 *Dombrowski,* 413 U.S. 433, 447, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973). The Courts are
11 to review the officer's conduct from the perspective of a reasonable officer on the scene,
12 given officers are forced to make split-second judgments on the amount of force that is
13 necessary in a particular situation. *Graham,* 490 U.S. at 396. Factors that a Court should
14 consider are "the severity of the crime at issue, whether the suspect poses an immediate
15 threat to the safety of the officers or others, and whether he is actively resisting arrest or
16 attempting to evade arrest by flight." *Id.* Another major factor the Court should review is
17 whether the use of force was objectively reasonable under the circumstances by weighing
18 the 'nature and quality of the intrusion' against the 'countervailing governmental
19 interests at stake'. *Drummond v. City of Anaheim,* 343 F.3d 1052, 1056 (9th Cir.2003).
20 Any genuine issues of material fact concerning the underlying facts of the officer's
21 conduct and mental state are questions of fact for the jury. *Acosta v. City and County of*
22 *San Francisco,* 83 F.3d 1143, 1149 (9th Cir.1996). If there are undisputed essential
23 facts the Court may properly determine as matter of law that the officer's actions were
24 reasonable. If an officer has probable cause to believe the suspect poses a threat of
25 serious physical harm either to the officers or other, it is not constitutionally
26 unreasonable to prevent escape by using deadly force. *Tennessee v. Garner,* 471 U.S. 1,
27 9-10, 105 S.Ct. 1694, 1700, 85 L.Ed.2d 1 (1985)
28

- 8 -

1. Here, there are disputed facts leading up to Officer Stover's shooting of Deanglo Rivera. Thus, the court finds that there are material facts that exist to whether Officer Stover had probable cause to believe that Deanglo Rivera posed a threat of serious physical harm to the officer or others. Therefore, the Court will deny Defendant Officer Stover's motion for summary judgment on qualified immunity.

*State Law Claims*

Initially, Defendants contended that Plaintiffs' state law claims should be dismissed because the Plaintiffs failed to submit a statutorily sufficient valid notice of claim. However, at oral arguments, the Defendants abandoned this argument given new Arizona case lawshows that the Plaintiff's Notice of Claim was sufficient. Therefore, the Court is only left with determining whether a material fact exists to support a claim for Negligence and Intentional Infliction of Emotional Distress.

1. *Negligence*

Defendants argue that police officers do not owe a duty of care to plaintiffs. They rely on two cases from other jurisdictions, *Woods v. Miamisburg City Schs.*, 454 F.Supp.2d 868 (S.D. Ohio 2003) and *Doe v. Pocokome City*, 745 F.Supp. 1137, 1139 (D.Md. 1990). However, given this is an issue of Arizona law, the Court is required to follow the decisions of Arizona's highest court or predict how the Court would resolve this question of law. *Dimidowich v. Bell & Howell*, 803 F.2d 1473, 1482 ( 9th Cir. 1986). Under Arizona law, a plaintiff must demonstrate that the defendant owed a duty to the plaintiff, a breach of duty, causation, and injury. *Nicoletti v. Westcor*, Inc. 131 Ariz. 140, 633 P.2d 332(1982). Government entities and employees are generally subject to tort liability for their negligence. *Greenwood v. State*, 217 Ariz. 438, 442 175 P.3d 687,691 (Ariz.App.2008) (relying on A.R.S. §12-820.02). To establish an action against an employee acting within the scope of his employment, plaintiff must establish that the employee intended to cause injury or was grossly negligent. A.R.S. §12-820.02.

1  Based on the disputed facts leading to the turn of events at issue, the Court can not
2  find as a matter of law, that plaintiffs can not establish a claim for gross negligence
3  against Officer Stover.

4  2. *Intentional Infliction of Emotional Distress*

5  To state a claim for intentional infliction of emotional distress ("IIED"), a plaintiff
6  must allege (1) the conduct of defendant was "extreme" and "outrageous," (2) defendant
7  intended to cause emotional distress or recklessly disregarded the near certainty that such
8  conduct would result from his conduct, and (3) severe emotional distress did occur as a result
9  of defendant's conduct. *Citizen Publishing Co. v. Miller*, 210 Ariz. 513, 517, 115 P.3d 107,
10  111 (2005). The acts must be " so outrageous in character and so extreme in degree, as to go
11  beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable
12  in a civilized community." *Mintz v. Bell Atlantic Systems Leasing International, Inc.*, 183
13  Ariz. 550, 554, 905 P.3d 559, 563 (App.1995)(internal quotations omitted). Furthermore, the
14  defendant must either intend to cause emotional distress or recklessly disregard the near
15  certainty that such distress will result from his conduct. *Ford v. Revlon*, 153 Ariz. 38, 43, 734
16  P.2d 580 (1987).

17  Defendants contend that the actions of Officer Stover can not be found as "so
18  outrageous in character and so extreme in degree, as to go beyond all possible bounds of
19  decency, and to be regarded as atrocious and utterly intolerable in a civilized community."
20  But based on the disputed facts leading to the killing of Deanglo Rivera a, the Court can not
21  find as a matter of law, that the plaintiffs can not establish a claim for IIED against Officer
22  Stover.

23  *Conclusion*

24  Defendants motion for summary judgment is granted in part and denied in part
25  pursuant the reasoning above. Therefore,

26  **IT IS HEREBY ORDERED** that the defendant's motion for summary judgment
27  (Doc. #42) is **granted in part** and **denied in part**.

28

1 **IT IS FURTHER ORDERED** that Tucson Police Department is dismissed from the
2 lawsuit.

3 **IT IS FURTHER ORDERED** that Chief Richard Miranda is dismissed from the
4 lawsuit.

5 **IT IS FURTHER ORDERED** that both parties are to submit a Proposed Pre-Trial
6 Order by October 30, 2009.

7 **IT IS FURTHER ORDERED** that an in court Pre-Trial Conference shall be held on
8 November 9, 2009 at 1:30 PM in Judge Collins' Courtroom #5B located at Evo A.
9 DeConcini United States Courthouse, 405 W. Congress St. Tucson, Arizona 85718.

11 DATED this 28th day of September, 2009

Raner C. Collins
United States District Judge